UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X        Index No.:   1:25-cv-01265

RUTH CALLE,

                    Plaintiff,

         -against-

CANNON KEARNEY,

                  Defendant.

-------------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

---

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431

## TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................. I

**TABLE OF AUTHORITIES** ............................................................................ II

**INTRODUCTION** ........................................................................................... 1

**STATEMENT OF MATERIAL FACTS** ........................................................... 1

**STANDARD OF REVIEW** ............................................................................. 5

    I. MOTION TO STRIKE ................................................................................. 5

    II. MOTION TO DISMISS .............................................................................. 5

**LEGAL ARGUMENTS** .................................................................................. 6

    I. THE COURT HAS DIVERSITY JURISDICTION ...................................... 6

    II. PLAINTIFF PLED A "FACIALLY PLAUSIBLE" CLAIM UNDER THE GMVPA ...... 7

        A.    *Defendant Kearney's Abuse of Plaintiff Was a Crime of Violence* ......................... 7

        B.    *Defendant Kearney's Abuse of Plaintiff Was Motivated by Gender Animus* .......... 9

        C.    *Plaintiff Was Subject to Domestic Violence in New York City* ............................. 11

    III. PLAINTIFF'S GMVPA CLAIM WAS TIMELY .................................... 11

    IV. PLAINTIFF EFFECTUATED SERVICE ON DEFENDANT KEARNEY ................. 12

        A.    *Defendant Kearney Offered No Rebuttal to the Process Server's Affidavit* .......... 14

        B.    *Dismissal of the Complaint for Insufficient Process Is Not Appropriate at This*

    *Stage* .................................................................................................. 15

    V. THE MOTION TO STRIKE IS WITHOUT MERIT ................................... 16

        A.    *There is No Basis for Sealing the Complaint* ..................................................... 17

    VI. CONCLUSION ....................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 6, 7, 10

*Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899 (PAE), 2024 U.S. Dist. LEXIS 148291

    (S.D.N.Y. Aug. 19, 2024) ............................................................................................. 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 5, 6, 7

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) ........... 18

*Bloise v. Q4 Generational Wealth, Inc.*, No. 22-CV-10488 (JHR) (SDA), 2023 U.S. Dist. LEXIS

    128672 (S.D.N.Y. July 25, 2023) ............................................................................. 13

*Breest v. Haggis*, 115 N.Y.S.3d 322 (N.Y. App. Div. 2019) .......................................... 9

*Coker v. Georgia*, 433 U.S. 584 (1977) ..................................................................... 9

*Commercial Union Ins. Co. v. Upjohn Co.*, 409 F. Supp. 453 (D.C. La. 1976) ............................. 5

*Crisonino v. N.Y.C. Hous. Auth.*, 985 F. Supp. 385 (S.D.N.Y. 1997) .......................................... 10

*Daley v. Alia*, 105 F.R.D. 87 (E.D.N.Y. 1985) .............................................................. 15

*De Cespedes v. Weil*, No. 155472/2020, 2021 N.Y. Misc. LEXIS 557 (Sup. Ct. 2021) ............... 10

*Diffley v. Allied Signal, Inc.*, 921 F.2d 421 (2d Cir. 1990) ............................................. 11

*Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 U.S. Dist. LEXIS 175929 (S.D.N.Y. Sep. 27, 2024)

    ............................................................................................................................. 12

*Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 U.S. Dist. LEXIS 220347 (S.D.N.Y. Dec. 5,

    2024) ..................................................................................................................... 11

*Doe v. Doe*, 83 Misc. 3d 408 (N.Y. Sup. Ct. 2024) ...................................................... 8

*Doe v. Gonzalez*, No. 21-CV-4580 (JS) (LGD), 2023 U.S. Dist. LEXIS 136141 (E.D.N.Y. Aug. 4, 2023) ........................................................................................................................ 9

*Doe v. N.Y.C. Dep't of Educ.*, No. 22-CV-07773 (OEM), 2024 U.S. Dist. LEXIS 132574 (E.D.N.Y. July 26, 2024).................................................................................. 8, 16

*Doe v. Olive Leaves, Inc.*, No. 18-CV-5734 (HG) (TAM), 2024 U.S. Dist. LEXIS 29387 (E.D.N.Y. Feb. 16, 2024) ......................................................................................... 9

*FTC v. AbbVie Prods. LLC*, 713 F.3d 54 (11th Cir. 2013) .......................................... 18

*Gallo v. Prudential Residential Servs.*, 22 F.3d 1219 (2d Cir. 1994)............................. 10

*Grammenos v. Lemos*, 457 F.2d 1067 (2d Cir. 1972)................................................... 15

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004) .................................. 6

*HSBC Bank USA, Nat'l Ass'n v. Proctor*, 220 N.Y.S.3d 292 (N.Y. App. Div. 2024) ............. 13, 14

*In re N.Y. Times Co.*, 828 F.2d 110 (2d Cir. 1987) ....................................................... 18

*J & J Sports Prods. v. Arnoat*, No. 06-CV-2103 (WHP), 2007 U.S. Dist. LEXIS 50585 (S.D.N.Y. July 3, 2007)........................................................................................... 15

*JL v. Rockefeller Univ.*, 2023 N.Y. Misc LEXIS 2764 (N.Y. Sup. Ct. 2020)................................ 9

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982)................................................................... 18

*JP Morgan Chase Bank v. Dennis*, 89 N.Y.S.3d 135 (N.Y. App. Div. 2018)............................... 14

*Melton v. Brotman Foot Care Grp.*, 604 N.Y.S.2d 203 (N.Y. App. Div. 1993) ............................ 12

*Mosley v. Brittain*, No. 152020/2017, 2018 N.Y. Misc. LEXIS 32462 (Sup. Ct. Apr. 19, 2018). 10

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,* 301 F.3d 54 (2d Cir. 2002)..................... 14

*O'Rear v. Diaz*, 2025 U.S. Dist. LEXIS 11952 (S.D.N.Y. Jan. 23, 2025)........................................ 8

*Papasan v. Allain*, 478 U.S. 265 (1986)........................................................................ 6

*Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 U.S. Dist. LEXIS 11582 (S.D.N.Y. Jan. 22, 2025) ................................................................................................................11, 12

*People v. Payton,* 161 Misc. 2d 170 (Crim Ct. 1994) .................................................. 17

*Prescient Acquisition Group, Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374 (S.D.N.Y. 2007)............. 18

*Prf'l Asset Mgmt, Inc.. v. Penn Square Bank*, 566 F. Supp. 134 (D.C. Okl. 1983) ........................ 5

*Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001).................................................... 16

*Romandette v. Weetabix Co.*, 807 F.2d 309 (2d Cir. 1986) ............................................................ 15

*S.H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171 (N.Y. App. Div. 2022)........................................11

*Sassower v. City of White Plains*, No. 89-CV-1267 (MJL), 1993 U.S. Dist. LEXIS 13475 (S.D.N.Y. Sept. 24, 1993) .............................................................................................. 15

*Sheindlin v. Brady*, No. 21-CV-1124 (LJL), 2022 U.S. Dist. LEXIS 109908 (S.D.N.Y. June 21, 2022) .................................................................................................................... 16

*Smith v. Pro Camps, Ltd.*, 210 N.Y.S.3d 173 (N.Y. App. Div.)....................................................11

*Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276 (S.D.N.Y. 2020) ..................................... 16

*Under Seal v. Under Seal*, 273 F. Supp. 3d 460 (S.D.N.Y. 2017)................................................. 18

*United States v. Sovie*, 122 F.3d 122 (2d Cir. 1997) .................................................................... 17

*Vargas v. Dipilato*, No. 21-CV-3884 (ER), 2023 U.S. Dist. LEXIS 165944 (S.D.N.Y. Sep. 18, 2023) ................................................................................................................ 15, 16

*Velez v. Vassallo*, 203 F. Supp. 2d 312 (S.D.N.Y. 2002) ............................................................. 12

*Victoria Sales Corp. v. Emery Air Freight, Inc.*, No. 86-CV-1610 (JFK), 1987 U.S. Dist. LEXIS 8295 (S.D.N.Y. Sep. 9, 1987) ..................................................................................... 15

S<span>TATUTES</span>, R<span>ULES</span>, <span>AND</span> R<span>EGULATIONS</span>

28 U.S.C § 1332(a) ................................................................................................ 1, 7

CPLR § 308 ............................................................................................................... 1

CPLR § 202 ............................................................................................................. 12

CPLR § 308 ......................................................................................................... 13, 14

Fed. R. Civ. P. 4 ................................................................................................... 1, 14

Fed. R. Civ. P. 12 ................................................................................................... 16

N.Y. Penal Law § 120.14(2) ..................................................................................... 8

N.Y. Penal Law § 130.55 .......................................................................................... 9

N.Y. Penal Law § 240.26 .......................................................................................... 8

N.Y. Penal Law § 240.30(3) ...................................................................................... 8

N.Y. Penal Law § 120.00 ........................................................................................... 8

N.Y.C. Admin. Code § 10-1103 ............................................................................ 8, 9

N.Y.C. Admin. Code § 10-1104 ................................................................................ 8

N.Y.C. Admin. Code § 10-1105 .............................................................................. 12

O<span>THER</span> A<span>UTHORITIES</span>

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1985) ........... 6

Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) 18

## INTRODUCTION

Plaintiff, Ruth Calle ("Plaintiff"), submits this Memorandum of Law in Opposition to Defendant, Cannon Kearney's ("Kearney") Motion to Dismiss and Strike the Second Amended Complaint, which seeks dismissal of Plaintiff's claims under the New York City Gender-Motivated Violence Protection Act ("GMVPA"). First, Plaintiff properly invoked this Court's diversity jurisdiction under 28 U.S.C § 1332(a). Second, Plaintiff has plainly stated a facially plausible claim under the GMVPA. Third, Plaintiff's claims were filed within the GMVPA's revival window, and therefore, are not time barred. Finally, as permitted by Rule 4 of the Federal Rules of Civil Procedure and CPLR § 308, Plaintiff properly served the complaint and summons to a person of suitable age and discretion at Defendant Kearney's actual place of business. Accordingly, Plaintiff respectfully requests that Defendant Kearney's Motion be denied in its entirety.

## STATEMENT OF MATERIAL FACTS

In July 2012, Plaintiff enrolled at the Charlotte School of Law in Charlotte, North Carolina. ECF 17 ("SAC"), ¶ 8. On her first day of class, Plaintiff met Defendant Kearney, a fellow law student who was in Plaintiff's graduating class. *Id.* During the first few months of school, Defendant Kearney courted Plaintiff to be in a romantic relationship. *Id.* ¶ 9.

On September 12, 2012, Plaintiff and Defendant Kearney began dating. *Id.* ¶ 11. Shortly after, Defendant Kearney initiated an emotionally abusive campaign of domestic violence against Plaintiff. *Id.* ¶ 12. For example, Defendant Kearney regularly degraded Plaintiff by telling her that she was "fat," and/or "dumb," and mocking her for having been sexually abused by a family member when she was a child. *Id.* ¶ 13. In December 2012, Plaintiff and Defendant Kearney

1

got into an argument while they were driving in Defendant Kearney's car, and Defendant Kearney forcefully bit her finger. *Id.* At 14.

Throughout the course of their relationship, Defendant Kearney brutally beat Plaintiff during arguments. *Id.* ¶ 16. For instance, during an argument on January 13, 2013, Defendant Kearney jumped on top of Plaintiff with his arms wrapped around her shoulders, which caused Plaintiff's legs to buckle because she could not support his weight. *Id.* Plaintiff fell on the ground and twisted her left ankle. *Id.* The next morning, Defendant Kearney brought Plaintiff to the Novant Health Presbyterian Medical Center, where she was diagnosed with a broken left ankle. *Id.* ¶ 18.

In May 2013, while Plaintiff and Defendant Kearney were driving to Myrtle Beach, South Carolina, Defendant Kearney pulled over on the side of the road and demanded that Plaintiff get out of the car to have sex in broad daylight. *Id.* ¶¶ 19-20. When they got out of the car, Defendant Kearney took off his pants and exposed his erect penis in public. Plaintiff immediately got back in the car and refused to have sex with Defendant. *Id.* ¶ 20.

In April 2013, Defendant Kearney purposefully reversed his car as Plaintiff was getting in, causing Plaintiff's head to hit the concrete driveway. *Id.* ¶ 21. Plaintiff was later diagnosed with a concussion and received several staples in her head. *Id.* ¶ 22. In June 2013, while Defendant Kearney and Plaintiff were visiting Los Angeles, California, he forcibly pulled her out of the car. Plaintiff fell to the ground and hit her head on the pavement a second time. *Id.* ¶ 23.

In August 2013, unable to keep up with the work and maintain her grades due to Defendant Kearney's pervasive physical and emotional torture, Plaintiff dropped out of law school. *Id.* ¶ 27. Nevertheless, Defendant Kearney continued to subject Plaintiff to brutal abuse. On August

21, 2013, Plaintiff and Defendant Kearney got into an argument, and Defendant Kearney repeatedly punched Plaintiff in the face, causing her to sustain a black eye and bloody lip.  *Id.* ¶ 28.  During the confrontation, Defendant Kearney also bit Plaintiff's back.  *Id.*  A few months later, during another argument, Defendant Kearney became so enraged that he bit Plaintiff's ring finger to the bone, bit her nose, pulled her hair, and slapped her.  *Id.* ¶ 32.  Immediately after, Plaintiff went to the Carolinas Medical Center, where she was told that she needed to schedule a surgery to repair her ring finger.  *Id.* ¶ 33.

Without anyone else to pick her up from the hospital, Plaintiff eventually called Defendant Kearney.  *Id.* ¶ 32.  While Plaintiff was getting into Defendant's car after leaving the hospital, he slammed the car door on the same ring finger that he had bitten.  *Id.* ¶ 34.  A few days later, Plaintiff filed a civil restraining order against Defendant Kearney.  *Id.* ¶ 35.

In August 2014, Plaintiff moved to Teaneck, New Jersey, and Defendant moved to Washington Heights, New York, so that he could be close to Plaintiff.  *Id.* ¶ 39.  Between 2015 and 2019, Defendant Kearney forced Plaintiff to give him oral sex on multiple occasions while they were driving in his car in New York City.  *Id.* ¶ 40.  In February 2015, Plaintiff attended Defendant Kearney's Superbowl party, which he hosted at his apartment.  *Id.* ¶ 41.  That night, they got into a fight and Defendant Kearney punched Plaintiff and pulled her hair.  *Id.*  Defendant Kearney also dragged Plaintiff into a hallway in his apartment by her shirt.  *Id.*

As another example of Defendant Kearney's psychologically abusive behavior, on June 1, 2015, Defendant Kearney sent a text message to Plaintiff which joked about the fact that she was sexually assaulted when she was a child: "[H]orrible you admit to a stretched out pussy…sad [you] were raped so young [shaking my head]."  *Id.* ¶ 44.  A few days later, Defendant Kearney

3

text messaged Plaintiff, "I mean lose weight, damn/ Like it[']s embarrassing to go out with [you]…Hispanic women in NY, rich or poor, are usually slim build…so why would I be seen with Dumbo the Evil Elephant." *Id.* ¶ 45.

At the end of July 2015, Plaintiff drove Defendant Kearney to Buffalo, New York, so that he could take the New York State Bar Exam. *Id.* ¶ 46. After the exam, Defendant Kearney beat Plaintiff at their hotel. *Id.* ¶ 47. In January 2016, Defendant Kearney beat Plaintiff in her New Jersey apartment, reopening her head wound as he pushed Plaintiff against the corner of her bedroom dresser. *Id.* ¶ 48.

Afterwards, Plaintiff broke up with Defendant Kearney, changed her phone number, and moved to Maryland. *Id.* ¶ 51. Although Plaintiff was attempting to move on from the abusive, turbulent, and violent relationship, Defendant Kearney continued to pursue her, as he consistently contacted her via email between April and September 2016, swearing that he loved her, that he would work on their relationship, and that he would never hurt her again. *Id.* ¶¶ 54, 57. In a telephone conversation with Plaintiff during this period, Defendant admitted that he had been "physically abusive" and ascribed it to "a mental problem." *Id.* ¶ 59.

Nevertheless, Defendant Kearney's cycle of violence continued. In October 2017, Defendant Kearney beat Plaintiff while they were attending an NFL football game in Dallas, Texas, dragging Plaintiff on glass-covered asphalt in the parking lot of the stadium. *Id.* ¶ 64. On February 18, 2018, Plaintiff and Defendant Kearney got into another fight. When Plaintiff told him that she did not like being called fat, Defendant Kearney pushed her and punched her upper chest, leaving a bruise. *Id.* ¶ 65. Later that afternoon, a police officer who had noticed the bruise arrested Defendant Kearney. *Id.* ¶ 66.

4

A few days later, Defendant Kearney apologized to Plaintiff, and they made up.  Despite the continued assaults and violence, Plaintiff continued to date Defendant Kearney on-and-off.

On January 11, 2020, Plaintiff emailed Defendant Kearney that she was going to file a civil restraining order.  *Id.* ¶ 70.  Plaintiff later ended all communications with Defendant Kearney.  *Id.* ¶ 72.

## STANDARD OF REVIEW

### I. MOTION TO STRIKE

Fed. R. Civ. P. 12(f) states that, "Upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  However, motions to strike "are not proper methods of disposing of part or all of a complaint."  *Wray v. Edward Blank Assocs.*, 924 F. Supp. 498, 501 (S.D.N.Y. 1996) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed. 1985)).  However, to "avoid being restricted by the technical form of common-law practice, which the federal rules have abandoned, courts may treat motions to strike as motions to dismiss."  *Id.* (citing *Prf'l Asset Mgmt, Inc. v. Penn Square Bank*, 566 F. Supp. 134, 136 (D.C. Okl. 1983); *Commercial Union Ins. Co. v. Upjohn Co.*, 409 F. Supp. 453, 459 (D.C. La. 1976)).

In this case, Defendant Kearney's motion to strike should be treated as a motion to dismiss, and denied for the reasons set forth below.

### II. MOTION TO DISMISS

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As the Court held in *Twombly*, the pleading standard does not require "detailed factual allegations," but

it "demands more than an unadorned, the defendant-unlawfully- harmed-me accusation." *Id.* at 570 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan*, 478 U.S. at 286)).  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 67 – 78 (2009) (quoting *Twombly*, 550 U.S. at 555 – 57).  However, "a heightened pleading requirement" requiring the pleading of specific facts beyond those necessary to state a claim and the grounds showing entitlement to relief, "is impermissibl[e]."  *Twombly*, 550 U.S. at 570.

Here, Plaintiff has met her burden to provide a "facially plausible" "notice pleading," and Defendant Kearney's Motion should be denied in its entirety.

## LEGAL ARGUMENTS

### I. THE COURT HAS DIVERSITY JURISDICTION

The Court has subject matter jurisdiction over all civil actions where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between... Citizens of different States." 28 U.S.C § 1332(a).  Diversity of citizenship is determined at the time the suit is filed.  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

Here, Plaintiff alleged that "there is complete diversity of citizenship" in this action, because "Plaintiff is a . . . citizen of the [Commonwealth] of Pennsylvania" while "Defendant Kearney . . . is a . . . citizen of the County of New York, State of New York."  SAC ¶ 4, 6, 7.  Plaintiff has also alleged damages that exceed the statutory threshold of $75,000.  *Id.* ¶ 4.  Accordingly, Plaintiff has properly invoked this Court's diversity jurisdiction pursuant to 28 U.S.C § 1332(a).

## II.  PLAINTIFF PLED A "FACIALLY PLAUSIBLE" CLAIM UNDER THE GMVPA

Defendant Kearney's request for a blanket dismissal of Plaintiff's claims under the GMVPA, based on her alleged failure to establish a *prima facie* claim, is inappropriate at this juncture.  As discussed *supra*, the proper standard is whether Plaintiff's complaint, when liberally construed, states a claim for relief that is "plausible on its face," not whether Plaintiff has presented a *prima facie* case.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

Here, Defendant Kearney's Motion provides a cursory analysis of the issues, which are fact-dependent, disputed, and cannot be resolved without discovery, making them inappropriate to decide at the motion to dismiss stage.  Putting aside Defendant Kearney's misapplication of the appropriate legal standard, Plaintiff has established a *prima facie* claim, and certainly a facially plausible claim, under the GMVPA.

### A.  Defendant Kearney's Abuse of Plaintiff Was a Crime of Violence

The GMVPA establishes a cause of action for any individual "injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender."  N.Y.C. Admin. Code § 10-1104.  Under the statute, a "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law if the conduct presents a serious risk of physical injury to another."  *Id.* § 10-1103.

Here, the Washington Heights Assault, a domestic violence incident where Defendant Kearney punched Plaintiff and dragged her by her shirt, clearly qualifies as "an act or series of acts that would constitute a misdemeanor or felony," under the GMVPA.  By striking Plaintiff in the

course of "a fight," Defendant Kearney violated N.Y. Penal Law § 240.30(3).[1]  This offense, a

Class A misdemeanor, qualifies as a predicate offense for a "crime of violence" as defined by the

GMVPA.  *See* N.Y.C. Admin. Code § 10-1103.  Separately, the incidents in which Defendant

Kearney sexually assaulted Plaintiff by "forc[ing] her to give him oral sex" constitute "crime[s] of

violence" under the GMVPA.[2]  Finally, because all of these acts took place within New York City,

SAC ¶ 40-41, they fall squarely within the territorial scope the GMVPA.  *See Doe v. Doe*, 83 Misc.

3d 408, 414 (N.Y. Sup. Ct. 2024).

      Further, Defendant Kearney's actions presented a serious risk of physical injury to Plaintiff.

Here, by "punch[ing]" Plaintiff during the Washington Heights Assault, Defendant Kearney

engaged in conduct that posed a clear and "serious risk of physical injury."  *See, e.g.*, *Doe v. N.Y.C.

Dep't of Educ.*, No. 22-CV-07773 (OEM), 2024 U.S. Dist. LEXIS 132574, at *19 – 20 (E.D.N.Y.

July 26, 2024) (finding that defendant engaged in conduct that presented a serious risk of physical

injury when he "pushed [plaintiff] forcefully against the front door of a building").

      Similarly, the incidents where Defendant Kearney forced Plaintiff to engage in

nonconsensual oral sex also presented a serious risk of physical injury.  *O'Rear v. Diaz*, 2025 U.S.

Dist. LEXIS 11952, at *27 (S.D.N.Y. Jan. 23, 2025) (finding that plaintiff adequately pled a serious

risk of physical injury where defendant had sexual intercourse with plaintiff while she was

unconscious); *see also Doe v. Olive Leaves, Inc.*, No. 18-CV-5734 (HG) (TAM), 2024 U.S. Dist.

---

[1]  N.Y. Penal Law § 240.30(3) provides that "[a] person is guilty of aggravated harassment in the second degree when . . . [w]ith the intent to harass, annoy, threaten or alarm another person, he or she strikes, shoves, kicks, or otherwise subjects another person to physical contact."  Defendant Kearney also committed assault in the third degree against Plaintiff during the Washington Heights Assault, as well as harassment in the second degree and menacing in the second degree.  *See* N.Y. Penal Law §§ 120.00, 240.26, 120.14(2).

[2]  N.Y. Penal Law § 130.55 states that "[a] person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent . . . .").

LEXIS 29387, at *30 (E.D.N.Y. Feb. 16, 2024) (cleaned up) (quoting *Doe v. Gonzalez,* No. 21-CV-4580 (JS) (LGD), 2023 U.S. Dist. LEXIS 136141, at *6 (E.D.N.Y. Aug. 4, 2023)) (citing *Coker v. Georgia*, 433 U.S. 584, 597-98 (1977)) ("Sexual assault represents a serious risk of physical injury, as evidenced by the Supreme Court's statement that sexual assault is a violent crime because it normally involves force to overcome the will and capacity of the victim to resist.").

## B. Defendant Kearney's Abuse of Plaintiff Was Motivated by Gender Animus

A crime of violence is "motivated by gender" when it was "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Admin. Code § 10-1103.  With respect to Defendant Kearney's sexual abuse of Plaintiff, it is well settled that "allegations of rape and sexual assault state a claim under the GMVPA because '[m]alice or ill will based on gender is apparent from the alleged commission of the act itself.'" *Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899 (PAE), 2024 U.S. Dist. LEXIS 148291, at *40 (S.D.N.Y. Aug. 19, 2024) (quoting *Breest v. Haggis*, 115 N.Y.S.3d 322, 326 n.1 (N.Y. App. Div. 2019)).

Defendant Kearney's claim that the GMVPA applies only to violence that is "sexual in nature," Def.'s Mem. at 14-15, is plainly incorrect.  The Washington Heights Assault was an act of domestic violence, conduct that lies at the core of the GMVPA's protections.  *See JL v. Rockefeller Univ.*, 2023 N.Y. Misc LEXIS 2764, at *13 (N.Y. Sup. Ct. 2020) ("The [GMVPA] . . . establishes a private right of action and a civil remedy for victims of gender violence, such as *domestic violence* . . .") (emphasis added); *see also Breest,* 115 N.Y.S.3d at 326 n.1 (noting that the legislative history of the GMVPA "focused on how victims of *domestic violence* would be able to use [the GMVPA] to sue their abusers") (emphasis added).

9

Moreover, Defendant Kearney's sexual abuse of Plaintiff provides additional evidence of the gender-based animus that motivated the Washington Heights Assault. *See Breest*, 115 N.Y.S.3d at 330 ("Animus inheres where consent is absent."). Defendant Kearney's longstanding pattern of domestic abuse, together with his virulently misogynistic comments, further underscore his animus. *See* SAC 17 ¶ 44 ("[H]orrible you admit to a stretched out pussy . . . sad [you] were raped so young [shaking my head]."); *De Cespedes v. Weil*, No. 155472/2020, 2021 N.Y. Misc. LEXIS 557, at *6 – 7 (Sup. Ct. 2021) ("[A]llegations that [defendant] made sexist and demeaning statements . . . and had a history of committing violent and threatening acts against plaintiff and other women . . . reflect [defendant]'s animus against women in general and plaintiff in particular."); *Mosley v. Brittain*, No. 152020/2017, 2018 N.Y. Misc. LEXIS 32462, at *7 (Sup. Ct. Apr. 19, 2018) (finding that because Defendant "repeatedly called [Plaintiff] 'bitch,' a term that is derogatory toward women," he had "demonstrate[ed] a clear animus toward [Plaintiff] because she was a woman").

In any case, Plaintiff has more than met her burden at this early stage of litigation, because animus "is usually a question of fact." *Crisonino v. N.Y.C. Hous. Auth.*, 985 F. Supp. 385, 389, 391 (S.D.N.Y. 1997) (citing *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (finding that plaintiff had adequately pled gender animus under Title VII where plaintiff alleged that defendant "called plaintiff a 'dumb bitch' and later shoved her to the ground"). As such, Plaintiff is entitled to the "reasonable inference" that an assault committed by Defendant Kearney against her, within the context of an eight-year pattern of domestic violence and sexual abuse, was at least partially motivated by gender-based animus. *See Iqbal*, 556 U.S. at 663.

**C. Plaintiff Was Subject to Domestic Violence in New York City**

Next, Defendant Kearney argues that Plaintiff has never been a resident of New York City, so the GMVPA does not entitle Plaintiff to relief under the statute. *See* Def.'s Mem. at 14. In support of this claim, Defendant Kearney cites *S.H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171 (N.Y. App. Div. 2022) and *Smith v. Pro Camps, Ltd.*, 210 N.Y.S.3d 173 (N.Y. App. Div.), which are unrelated to the application of the GMVPA to Plaintiff's claims because both cases involve the extraterritorial applications of the New York Child Victims Act. Def.'s Mem. at 13-14. Here, Defendant Kearney's assertion is irrelevant because courts have routinely allowed GMVPA claims by non-residents to go forward. *See, e.g.*, *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 U.S. Dist. LEXIS 220347, at *11 (S.D.N.Y. Dec. 5, 2024) (denying motion to dismiss GMVPA claim where defendant had brought plaintiff, a Michigan resident, from Detroit to New York City aboard a private jet, sexually assaulted her, and then flew Plaintiff back to Michigan).

**III. PLAINTIFF'S GMVPA CLAIM WAS TIMELY**

A Court sitting in diversity jurisdiction applies the forum state's statute of limitations provisions, as well as any provisions which govern the tolling of the statute of limitations. *See Diffley v. Allied Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990). Here, the statute of limitations under the GMVPA is ordinarily seven years. In January 2022, the GMVPA was amended, "By creating a two-year window for the revival of otherwise time-barred claims under the law… That window opened on March 1, 2023, and closes on March 1, 2025." *Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 U.S. Dist. LEXIS 11582, at *10 (S.D.N.Y. Jan. 22, 2025). Plaintiff's GMVPA claim was timely because the complaint was filed on February 12, 2025. *See* ECF 1.

Defendant Kearney asserts that the limitations period applicable to Plaintiff's claim is determined by CPLR § 202, which applies to, "action[s] based upon a cause of action accruing without the state." Plaintiff's GMVPA claim arises from incidents that took place within New York, so CPLR § 202 is inapplicable here. *See* SAC ¶¶ 40-42.[3]

## IV. PLAINTIFF EFFECTUATED SERVICE ON DEFENDANT KEARNEY

Rule 4(e) of the Federal Rules of Civil Procedure provides that, "An individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Here, Plaintiff was able to serve Defendant Kearney within New York, ECF 11 ("Aff. Serv."), using the methods available for service of process in New York state courts of general jurisdiction:

> [D]elivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business.

CPLR § 308(2).

Here, Plaintiff served Defendant Kearney by delivering the summons and complaint to a person of suitable age and discretion at Defendant Kearney's actual place of business,[4] The

---

[3] Though there is presently a split within this District on the question of whether the New York Adult Survivors Act and Child Victims Act preempt the GMVPA revival window with regard to claims based on "sexual offenses," *compare Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 U.S. Dist. LEXIS 11582, at *10 (S.D.N.Y. Jan. 22, 2025) *with Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 U.S. Dist. LEXIS 175929, at *3 (S.D.N.Y. Sep. 27, 2024), the Washington Heights Assault was not a "sexual offense," and thus the GMVPA revival window is not preempted with regard to claims arising from it.

[4] "Having . . . effectively held [this] out . . . as his business address, and induced plaintiff's reliance thereon, [Defendant] cannot disclaim it as his 'actual place of business.'" *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting *Melton v. Brotman Foot Care Grp.*, 604 N.Y.S.2d 203, 205 (N.Y. App. Div. 1993)).

Kearney Law Group, located at 99 Park Avenue, Room 810, New York, NY 10016, which is confirmed in the affidavit of service. *See* Aff. Serv.[5]

An individual is, "of suitable age and discretion" under CPLR § 308(2), if they are "objectively [] of sufficient maturity, understanding[,] and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant." *Bloise v. Q4 Generational Wealth, Inc.*, No. 22-CV-10488 (JHR) (SDA), 2023 U.S. Dist. LEXIS 128672, at *3 (S.D.N.Y. July 25, 2023) (cleaned up). In *Bloise*, the Court held that, "An adult co-worker can satisfy these requirements; it makes no difference if the individual refuses to give his name or gives a false one." *Id. See also HSBC Bank USA, Nat'l Ass'n v. Proctor*, 220 N.Y.S.3d 292, 293 (N.Y. App. Div. 2024) (finding a *prima facie* showing that service had been made to "a person of suitable age and discretion" where the process server's affidavit merely "described the individual served as a white female with black hair, approximately 50 years old, five feet six inches in height, and 180 pounds").

In this case, the individual to whom Mr. Friedland delivered the summons and complaint declined to give her name and is thus referred to in the Affidavit of Service as Jane Doe. Aff. Serv. Regardless, the affidavit of service confirms that Defendant Kearney was served, "By delivering thereat a true copy of [the summons] to Jane Doe (Co-Worker), a person of suitable age and discretion." *Id.* The affidavit further affirms that Jane Doe was a Hispanic female with black hair, approximately 30-35 years old, five feet-three inches in height, and about 100-130 pounds. *Id.*

---

[5] The address for the Kearney Law Group is not disputed and has been confirmed via the website for the law firm. https://ckearneylaw.com/?utm_source=Google%20Business%20Page&utm_medium=Organic%20*Search&utm_cam paign=new%20york%20city.*

Accordingly, Jane Doe was a "person of suitable age and discretion." *See HSBC Bank*, 220 N.Y.S.3d 292, 293.

CPLR § 308(2) requires a Plaintiff to, "mail the summons by first class mail to the person to be served at his or her actual place of business." The Affidavit of Service states that, "on **March 11**, **2025**, service was completed by mailing a true copy of the [summons and complaint] to the <u>Defendant</u> at the above stated address," 99 Park Avenue, Room 810, New York, NY 10016, "in a First Class postpaid properly addressed envelope." Aff. Serv. (emphasis original). Accordingly, the method of service described in the Affidavit of Service complied with CPLR § 308 (2) and, by extension, Rule 4(e).

### A. Defendant Kearney Offered No Rebuttal to the Process Server's Affidavit

"In New York, a process server's affidavit of service establishes a *prima facie* case of the account of the method of service." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,* 301 F.3d 54, 57 (2d Cir. 2002). "To rebut this *prima facie* showing," a defendant must submit "a sworn, nonconclusory denial of service or swear to specific facts to rebut the statements in the process server's affidavit." *JP Morgan Chase Bank v. Dennis*, 89 N.Y.S.3d 135, 136 (N.Y. App. Div. 2018).

Here, Plaintiff filed the affidavit of service, but Defendant Kearney has not filed any sworn material rebutting Mr. Friedland's affidavit. Instead, Defendant Kearney bases his argument that service was improper on unsworn assertions in his Memorandum of Law that, "Defendant does not know anyone named Jane Doe" and that "Defendant did not receive any service via mail from the Plaintiff." Def.'s Mem. at 19. This sort of "bare allegation by a defendant that he was improperly served cannot be allowed to belie [a] private process server's return." *J & J Sports Prods. v. Arnoat*, No. 06-CV-2103 (WHP), 2007 U.S. Dist. LEXIS 50585, at *3 (S.D.N.Y. July 3,

2007) (quoting *Sassower v. City of White Plains*, No. 89-CV-1267 (MJL), 1993 U.S. Dist. LEXIS 13475, at *7 (S.D.N.Y. Sept. 24, 1993)). Accordingly, Defendant Kearney has failed to rebut Plaintiff's *prima facie* showing that service was properly made.

### B. Dismissal of the Complaint for Insufficient Process Is Not Appropriate at This Stage

Even in circumstances where, unlike here, a party has raised "a factual dispute as to the propriety of service, in lieu of dismissal for insufficient process or an evidentiary hearing to decide the sufficiency of process, the Court may simply order that the plaintiff properly re-serve the defendant." *Vargas v. Dipilato*, No. 21-CV-3884 (ER), 2023 U.S. Dist. LEXIS 165944, at *6 (S.D.N.Y. Sep. 18, 2023); *see also Victoria Sales Corp. v. Emery Air Freight, Inc.*, No. 86-CV-1610 (JFK), 1987 U.S. Dist. LEXIS 8295, at *2 (S.D.N.Y. Sep. 9, 1987) (emphasis added) (quoting *Daley v. Alia*, 105 F.R.D. 87, 89 (E.D.N.Y. 1985)) ("[W]hen the grav[a]men of defendant's motion is insufficiency of process, the motion *must* be treated as one to quash service, with leave to plaintiff[] to attempt valid service."). In fact, "Rule 4 of the Federal Rules is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received *actual notice*.'" *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (emphasis added) (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).

In the motion to dismiss, Defendant Kearney acknowledged receipt of the summons and complaint, "The summons and complaint were laid on a desk in an office suit not owned or leased *in entirety* by the Defendant." Def.'s Mem. at 19. Defendant Kearney had actual notice of this action, and, indeed, received a copy of the summons and the complaint as a result of service.

Moreover, should this Court identify any defect in the manner in which service was made, Plaintiff requests leave to re-serve Defendant Kearney. *See Vargas*, 2023 U.S. Dist. LEXIS 165944, at *6.

**V. THE MOTION TO STRIKE IS WITHOUT MERIT**

As stated above, Defendant Kearney's motion to strike should be treated as a motion to dismiss. *See Wray v. Edward Blank Assocs.*, 924 F. Supp. 498, 501 (S.D.N.Y. 1996). Should the Court find that Defendant Kearney submitted a valid Rule 12(f) motion to strike, the motion should be denied in its entirety as none of Plaintiff's allegations are "superfluous." The purpose of a Rule 12(f) motion is to remove allegations from a pleading that are "immaterial, impertinent, or scandalous" to the point of having "*no possible relation or logical connection* to the subject matter of the controversy." *Sheindlin v. Brady*, No. 21-CV-1124 (LJL), 2022 U.S. Dist. LEXIS 109908, at *6 n.2 (S.D.N.Y. June 21, 2022) (emphasis added). "[T]o prevail on such a motion, a defendant 'must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 290 (S.D.N.Y. 2020) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). A motion to strike will be denied if, "the purportedly scandalous nature of [a] [p]laintiff's language derives from the fundamentally scandalous nature of [a defendant]'s alleged actions." *N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 132574, at *23.

Here, Defendant Kearney asserts that the Court should strike the entire Complaint despite the fact that the allegations are directly relevant to Plaintiff's claims. The episodes during which Defendant Kearney assaulted Plaintiff outside of New York City are relevant and should not be

stricken.[6]  *See De Cespedes*, 2021 N.Y. Misc. LEXIS 557, at *67.  These assaults are probative of the GMVPA claim's predicate offenses, because Defendant Kearney's past assaults on Plaintiff help to show that she had a "reasonable fear of physical injury" during the Washington Heights Assault, which is an element of both menacing in the second degree and harassment in the second degree.  *See People v. Payton,* 161 Misc. 2d 170, 174 (Crim Ct. 1994); *see also United States v. Sovie*, 122 F.3d 122, 126 (2d Cir. 1997) (holding that past episodes of domestic violence are admissible to prove that a victim's fear of injury by the abuser was reasonable).

To that end, Plaintiff's awareness of Defendant Kearney's post-traumatic stress disorder, a condition that has diagnostic criteria including, "angry outbursts (with little or no provocation) typically expressed as verbal or physical aggression towards people or objects," is also relevant in determining whether Plaintiff had a reasonable fear of physical injury during the Washington Heights Assault.  *See* Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 272 (5th ed. 2013).

### A.  There is No Basis for Sealing the Complaint

Defendant Kearney also asks this Court to, "seal the entire complaint in the interest of justice because to not seal or strike would seem to be aiding the malicious efforts of the Plaintiff to publicly humiliate the Defendant."  Def.'s Mem. at 20.  While it is unclear on what legal basis this pronouncement rests, "[a] complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision."  *Bernstein v. Bernstein Litowitz Berger*

---

[6]  Plaintiff's Second Amended Complaint makes clear that it describes only a fraction of the domestic violence that Plaintiff experienced at the hands of Defendant.  *See* SAC ¶ 16, 74.  The incidents included are necessary to establish both the intensity and duration of the pattern of abuse within which the Washington Heights Assault was situated.

*& Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) (quoting *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013)). "To overcome th[is] First Amendment right of access, the proponent of sealing must 'demonstrat[e] that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 144 (quoting *in re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). A party's "mere naked conclusory statement that publication will injure it falls woefully short" of this standard. *Id.* at 145 (cleaned up) (quoting *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982)).

Defendant Kearney has not attempted to articulate a basis for the "specific, rigorous findings" that a court must make before sealing a judicial document such as a complaint. *Id.* at 139. It is improper for Defendant Kearney to request that the complaint be sealed due to potential "embarrass[ment]" or "a generalized concern of adverse publicity," because neither of these reasons are "sufficiently compelling . . . [to] outweigh[] the presumption of access." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017) (quoting *Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374, 375 (S.D.N.Y. 2007)).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion to dismiss be denied in its entirety.

Dated: New York, New York
        April 28, 2025

Respectfully Submitted,

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*

/s/ Jesse S. Weinstein
Jesse S. Weinstein, Esq.
Christine E. Hintze, Esq.
Melissa N. Berouty, Esq.
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431