**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

RUTH CALLE,                                      Case No.: 1:25-cv-1265

               **Plaintiff,**

                                     **ANSWER TO SECOND**
      -against-                                   **AMENDED COMPLAINT**

**CANNON KEARNEY,**

               **Defendant.**
-------------------------------------------------------------X

      Comes now Defendant Cannon Kearney, by and through undersigned counsel, and states:

1.      Defendant denies Paragraphs 3, 5, 7, 9, 10, 12, 13, 15, 16, 17, 20, 24, 25, 28, 29, 31, 33, 35, 38, 40, 43, 46, 47, 48, 49, 54, 57, 60, 63, 64, 65, 67, 68, 69, 72, 74, 75, 76, 77, 78, 79, 80, 81, 84, 85, 86, and 97 of Plaintiff's Second Amended Complaint.

2.      Defendant admits Paragraphs 30, 53, 55, 56, 66, 71, 82, and 83 of Plaintiff's Second Amended Complaint.

3.      Defendant partially admits Paragraphs 2, 11, 14, 18, 21, 23, 27, 39, 41, and 70 of Plaintiff's Second Amended Complaint.

4.      Defendant is without sufficient information for Paragraphs 4, 6, 8, 19, 22, 26, 33, 34, 44, 45, 50, 51, 52, 58, 59, 61, 62, and 73 of Plaintiff's Second Amended Complaint.

5.      No response is required in Paragraphs 1, 37, and 42 of Plaintiff's Second Amended Complaint.

6.      Paragraph 1: The assertion regarding the legal authority under which Plaintiff brings her action is a legal conclusion to which no response is required. To the extent that a response is required, this assertion is denied. It is denied that Cannon Kearney has ever sexually assaulted, battered, or physically abused Plaintiff or that he has inflicted any injuries, physical or legal, upon Plaintiff.

7.      Paragraph 2: The factual assertions herein are admitted. However, to the extent that such editorialization warrants a response, the averment in Note 1 that there is something "ironic[]" about the referenced statement, that characterization is denied.

8.      Paragraph 3: Denied.

9.      Paragraph 4: Mr. Kearney is without sufficient knowledge as to the facts giving rise to diversity, and therefore denies this Paragraph.

10.     Paragraph 5: Denied.

11.     Paragraph 6: Mr. Kearney is without sufficient knowledge of Plaintiff's whereabouts and residency, and therefore denies this Paragraph.

12.     Paragraph 7: Denied. The complaint includes allegations that pre-date Mr. Kearney's New York residency.

13.     Paragraph 8: Mr. Kearney is without sufficient knowledge as to when Plaintiff enrolled in Charlotte School of Law. He denies that they met on the first day of class. He admits that they were classmates, and avers that they met during the first week of class.

14.     Paragraph 9: Denied.

15.     Paragraph 10: Denied. Mr. Kearney is a United States Army veteran who was honorably discharged after serving in Iraq. He does not suffer from PTSD, has never been diagnosed with PTSD, and has never been prescribed medication for it.

16.     Paragraph 11: Mr. Kearney is without sufficient information as to what is meant by the term "began dating," and therefore denies that portion of this Paragraph. He admits that the parties went on a date around the time identified in this Paragraph, and that they had a personal relationship.

17.     Paragraph 12: Denied. Defendant Cannon Kearney *never* abused the plaintiff in any way. The allegations made in Plaintiff's complaint range from either outright falsity to, at best,

incomplete. Plaintiff subjected Mr. Kearney to physical violence, harassed him, and refused to allow him to cut ties with her despite his numerous attempts to do so. Her means of doing so included, but was not limited to, threatening to claim to various authorities that he had harmed her, contacting him and those in his life against their wishes, often through new phone numbers and by pretending to be other people.

18.     Paragraph 13: Denied.

19.     Paragraph 14: Admitted in part and denied in part. Mr. Kearney admits that the parties got into an argument around this time while driving. However, Plaintiff was not merely "attempt[ing] to turn off the radio." Rather, she became volatile and violent while the defendant was driving the car, going so far as to grab at the gearshift and/or steering wheel and strike Mr. Kearney in the face, endangering the lives of both parties, as well as other motorists.

20.     Paragraph 15: Denied.

21.     Paragraph 16: Denied. The parties were not in an exclusive, committed relationship. Nonetheless, Plaintiff often reacted angrily and violently at times when she came to believe that Mr. Kearney was involved with other women. To the extent that Plaintiff sustained any physical injuries during these instances, it was in the course of self-defense by Mr. Kearney against her physical attacks.

22.     Paragraph 17: Denied. After being attacked by Plaintiff, Mr. Kearney restrained her to protect himself. He did not attack her.

23.     Paragraph 18: Admitted in part and denied in part. Mr. Kearney took Plaintiff to the hospital, but is aware of no broken ankle diagnosis. Nothing in the subsequent months indicated that she was experiencing symptoms of or receiving any treatment for same.

24.    Paragraph 19: Mr. Kearney admits that the parties took a trip by car to Myrtle Beach, South Carolina, at some point. He is without sufficient knowledge as to when, and therefore denies the remainder of this Paragraph.

25.    Paragraph 20: Denied.

26.    Paragraph 21: Denied in part and admitted in part. Defendant Kearney admits that at some point, as he attempted to leave her presence by car, the plaintiff tried to jump onto/into his moving vehicle, and fell. He denies the remainder of this Paragraph.

27.    Paragraph 22: Mr. Kearney admits that he took Plaintiff to the hospital. He is without sufficient information regarding any diagnosis or treatment, and denies the remainder of this Paragraph.

28.    Paragraph 23: Denied in part and admitted in part. Defendant Kearney admits that at some point, as he attempted to leave her presence by car, the plaintiff tried to jump onto/into his moving vehicle, and fell. He denies the remainder of this Paragraph. Moreover, he denies the characterization that the parties were visiting Los Angeles together. He was there for the summer. Without an invitation, Plaintiff came out and refused to leave his apartment despite multiple requests for her to do so.

29.    Paragraph 24: Denied.

30.    Paragraph 25: Denied.

31.    Paragraph 26: Mr. Kearney is without sufficient knowledge concerning what Plaintiff conveyed to Dagmar Rita Myslinka or the existence or nature of any reference letter, and therefore denies the same. He further denies that he abused her or that is to blame for any academic disappointment she experienced.

32.     Paragraph 27: Mr. Kearney admits that, to his understanding, Plaintiff's legal studies at Charlotte School of Law were discontinued due to academic underperformance. He denies having subjected her to "torture" or "abuse" of any kind.

33.     Paragraph 28: Denied.

34.     Paragraph 29: Denied. As he had to do numerous times, Defendant Kearney went to his car to get away from Plaintiff. Instead of letting him leave, Plaintiff jumped through the driver's side window and attacked him. An onlooker called police and reporter Plaintiff's behavior.

35.     Paragraph 30: Admitted.

36.     Paragraph 31: Denied.

37.     Paragraph 32: Denied.

38.     Paragraph 33: Mr. Kearney admits that Plaintiff went to the hospital after suffering an injury to her finger. He is without sufficient knowledge of her having been advised to have surgery, and therefore denies same. Moreover, he is unaware of her having undergone any relevant surgery in this time period.

39.     Paragraph 34: Mr. Kearney admits picking the Plaintiff up from the hospital. He is without sufficient knowledge as to whom other than himself Plaintiff could rely on for a ride. He denies having slammed a car door on her finger. He admits that he was arrested later that evening after Plaintiff, upset that he did not wish to allow her to stay at his apartment, related a false allegation to police to effectuate his arrest.

40.     Paragraph 35: Denied.

41.     Paragraph 36: Denied.

42.     Paragraph 37: The averment that Mr. Kearney violated a restraining order is a legal conclusion for which no response is required. To the extent that a response is required, this averment

is denied. Mr. Kearney denies the remaining averments in this Paragraph. To the extent that the parties had any contact while a restraining order was in place, it was at the behest of the Plaintiff, who constantly insisted on contact, even lobbing threats to obtain it, despite Mr. Kearney's best efforts to avoid her.

43.     Paragraph 38: Denied. There had been no break-up and was no reconciliation.

44.     Paragraph 39: Mr. Kearney admits that the parties moved, respectively, to Teaneck, New Jersey, and Harlem, New York. He denies that he moved to New York for her, and states that he moved there to continue his legal education.

45.     Paragraph 40: Denied.

46.     Paragraph 41: Admitted in part and denied in part. Plaintiff was a guest at a Super Bowl party hosted by Mr. Kearney. Plaintiff became intoxicated and belligerent, and attacked him, requiring that he defend himself and remove her from his apartment. He did not punch her.

47.     Paragraph 42: This Paragraph is a legal conclusion to which no response is required. To the extent a response is necessary, it is denied.

48.     Paragraph 43: Denied.

49.     Paragraph 44: Defendant Kearney is without sufficient information regarding the content of a text allegedly sent in 2015, and therefore denies same.

50.     Paragraph 45: Defendant Kearney is without sufficient information regarding the content of a text allegedly sent in 2015, and therefore denies same.

51.     Paragraph 46: Denied. Plaintiff accompanied Mr. Kearney to Buffalo on his trip to take the New York Bar Exam. She inflicted harassment and/or physical violence upon him both on the way to Buffalo and once they arrived.

52.     Paragraph 47: Denied.

53.    Paragraph 48: Denied.

54.    Paragraph 49: Mr. Kearney denies having tried to contact Plaintiff. As a general matter, it was Plaintiff who persisted in attempting to contact Mr. Kearney and continue their relationship in the absence of displays of similar interest. With respect to the allegations of a text message including this statement, Mr. Kearney is without sufficient knowledge, and therefore denies same. Indeed, after being blocked or ignored through one means of communication, the Plaintiff would contact Mr. Kearney through various other media to attempt to regain his attention or avoid being screened. Any allegation that he admitted any allegation that could be interpreted as having harmed her in the fashion set forth in the alleged quotation is Denied.

55.    Paragraph 50: As a general matter, it was Plaintiff who persisted in attempting to contact Mr. Kearney and continue their relationship in the absence of displays of similar interest. With respect to the allegations of a text message including this statement, Mr. Kearney is without sufficient knowledge, and therefore denies same. Indeed, after being blocked or ignored through one means of communication, she would contact him through various other mediums to attempt to regain his attention or avoid being screened. Any allegation that he admitted any allegation that could be interpreted as having harmed her in the fashion set forth in the alleged quotation is Denied.

56.    Paragraph 51: Mr. Kearney is without sufficient knowledge as to whether Plaintiff obtained another phone number immediately after she sent him a text message that was ignored, and therefore denies same. This denial notwithstanding, it would be in line with the practice of Plaintiff described above, by which she would obtain new phone numbers in an attempt to contact the Defendant. Mr. Kearney does not deny that she moved to Maryland sometime around 2016.

57.    Paragraph 52: Defendant Kearney is without sufficient information as to what is intended by the term "relationship," and therefore denies that they were in one. The averment that the parties

were in a relationship was abusive, turbulent, and violent is denied. It is denied that Defendant Kearney continued to pursue Plaintiff. He denies any "consistent" email contact, especially the implication that he was the driver of same. He admits that the parties were in mutual contact during some aspects of the April to September 2016 time period. Much of it was centered around Plaintiff's requests for him to visit her in Maryland.

58.    Paragraph 53: Admitted.

59.    Paragraph 54: Defendant Kearney denies that he "attempted to contact Plaintiff for several months" in the lead-up to October 2016. He admits that at some point around that time, Plaintiff informed him that she had retained legal counsel.

60.    Paragraph 55: Admitted. Plaintiff constantly made threats that she would spread falsehoods, take legal action, and engage in activities that would be injurious to Defendant as a means of forcing him to engage with her. This statement was an attempt to frame Plaintiff's threats for what they were—blackmail—and hopefully bring closure to the matter after five awful years. That she neither took legal action at that time nor accepted the invitation to discuss resolving her unfounded claims against him, but instead only brought this case years later, supports that interpretation of her actions.

61.    Paragraph 56: Admitted. Plaintiff constantly made threats that she would spread falsehoods, take legal action, and engage in activities that would be injurious to Defendant as a means of forcing him to engage with her. This statement was an attempt, in part, to frame Plaintiff's threats for what they were—blackmail—and hopefully bring closure to the matter. That she neither took legal action at that time nor accepted the invitation to discuss resolving her unfounded claims against him, but instead only brought this case years later, supports that interpretation of her actions.

62.    Paragraph 57: Denied.

63.     Paragraph 58: Defendant Kearney is without sufficient information concerning this purported recorded phone call from 2016, and therefore denies the allegations of this Paragraph.

64.     Paragraph 59: Defendant Kearney is without sufficient information concerning this purported recorded phone call from 2016, and therefore denies the allegations of this Paragraph.

65.     Paragraph 60: Denied.

66.     Paragraph 61: Defendant Kearney is without sufficient information concerning this purported text message from 2016, and therefore denies the allegations of this Paragraph.

67.     Paragraph 62: Defendant Kearney is without sufficient information regarding this allegation, and therefore denies same.

68.     Paragraph 63: Denied.

69.     Paragraph 64: Denied. Plaintiff was, as she often was, intoxicated, and became violent towards him. Defendant Kearney had to both protect himself and get Plaintiff under control in a way that both prevented his further injury and kept her from getting into trouble for her behavior. He denies beating her up, dragging her through a glass-filled parking lot, bruising her face, or buying her makeup to cover up any bruises.

70.     Paragraph 65: Denied. On or around this date, Plaintiff showed up at Mr. Kearney's apartment unannounced and uninvited. She attacked him, and he ran from her towards police. Plaintiff, despite being the aggressor and wholly at fault, reported to police that Mr. Kearney had committed a criminal act against her, leading to his arrest. Legal authorities did not pursue the matter further.

71.     Paragraph 66: Admitted. Mr. Kearney denies that the allegations Plaintiff made to the police were true.

72.     Paragraph 67: Mr. Kearney denies that he apologized, that there was anything for him to apologize for, or that he "continued" inflicting assaults and violence against her. The parties did resume seeing each other, as Plaintiff essentially used the threat of continued criminal prosecution as leverage for Mr. Kearney to continue being involved with her.

73.     Paragraph 68: Denied.

74.     Paragraph 69: Denied.

75.     Paragraph 70: Admitted in part and denied in part. At some point in that time period, Plaintiff advised Defendant that she intended to seek a civil restraining order. He admits that he reported a threat she made against him involving a gun to law enforcement authorities. He denies that the report he made was in any way retaliatory or grounded in bad faith.

76.     Paragraph 71: Admitted.

77.     Paragraph 72: Denied. Plaintiff has contacted the Defendant numerous times since 2020, despite his stated wishes not to communicate with her.

78.     Paragraph 73: Defendant is without sufficient knowledge regarding whether Plaintiff obtained a restraining order against him, and therefore denies that allegation. However, Mr. Kearney admits that he obtained a restraining order against the Plaintiff.

79.     Paragraph 74: Denied.

80.     Paragraph 75: Denied.

81.     Paragraph 76: Denied.

82.     Paragraph 77: Denied.

83.     Paragraph 78: Denied.

84.     Paragraph 79: Denied.

85.     Paragraph 80: Denied.

86.     Paragraph 81: Denied.

87.     Paragraph 82: Admitted.

88.     Paragraph 83: Admitted.

89.     Paragraph 84: Denied.

90.     Paragraph 85: Denied.

91.     Paragraph 86: Denied.

92.     Defendant denies all allegations not specifically admitted or denied.

93.     Pleading additionally and/or affirmatively, Mr. Kearney emphasizes that while there were instances in which he, unfortunately, used force, *every* such instance was in response to violent behavior by Plaintiff and in the cause of self-defense.

94.     Pleading additionally and/or affirmatively, Mr. Kearney never forced or coerced the plaintiff to do anything. This includes sexual activity.

95.     Pleading additionally and/or affirmatively, Mr. Kearney and Plaintiff Calle were never in an exclusive, committed relationship. The friction in their interactions stemmed from Calle's refusal to accept that and her efforts to scare him into complying with her desire for them to be together.

96.     He states the following affirmative defenses:

    a.  Statute of limitations;

    b.  Due Process;

    c.  Self-defense;

    d.  Failure to state a claim upon which relief may be granted;

    e.  Any injuries alleged to have been suffered by Plaintiff were not caused by Defendant, but rather were by her own negligence, conduct, actions, omissions, or inactions, or other alternative causes, or a combination thereof;

      f.   Unclean hands;

      g.   Failure to mitigate damages; and

      h.   Pleading additionally and/or affirmatively.

97.     Defendant Kearney denies that Plaintiff is entitled to any of the relief requested in her Wherefore clause.

98.     Defendant Kearney demands a trial by jury.

99.     Defendant Kearney reserves the right to plead further.

Dated: August 20, 2025                Respectfully Submitted by:

                                        _____
Kamelia "Mia" Poppe, Esq.,
*Counsel for Defendant*
Law Firm of Poppe & Associates, PLLC
142 W. 57th Street, 1007
New York, NY 10019

TO:   United States District Judge Jesse M. Furman

      (VIA ECF)

      Melissa Berouty, Esq.

      (VIA ECF)